UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**JOHNNY BEASON**<br><br>Defendant. | Case No. 1:19-cr-00309 (TNM) |

## MEMORANDUM ORDER

Johnny Beason moves *pro se* for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[1] In early 2021, the Court sentenced him to 46 months of imprisonment and 36 months of supervised release after he pled guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). *See* Min. Order dated 3/1/2021; Plea Agreement at 1, ECF No. 13.[2] Beason currently resides at Federal Correctional Institution Fort Dix. Mot. for Reduction in Sen. at 13 (Mot.), ECF No. 39.

After reviewing Beason's arguments, the Court denies his request. Beason's medical conditions do not rise to the level of an extraordinary and compelling reason for compassionate release. And even if they did, the § 3553(a) factors weigh against early release.

### I.

The Court briefly recounts the factual background of this case, which it has detailed elsewhere. *See United States v. Beason*, 19-cr-00309 (TNM), Order (April 13, 2020), ECF No.

---

[1] Beason filed his motion *pro se*. *See* Mot. for Reduction in Sen., ECF No. 39. After the Government responded, an attorney replied on Beason's behalf. *See* Notice of Att'y Appearance, ECF No. 43; Reply, ECF No. 44 (filed by attorney Benjamin Flick).

[2] All page numbers refer to the pagination generated by the Court's CM/ECF electronic filing system.

19 (April 13 Order).  In late 2019, a Metropolitan Police officer spotted Beason sitting in a car. *See* Statement of Offense at 2, ECF No. 14.  Based on information that Beason might possess a firearm, the officer asked him to step out of his vehicle.  *Id.*  Officers observed a handgun with an extended magazine in the seat where Beason had been sitting.  *Id.*  Beason had several prior felony convictions—all involving firearms.  *Id.* at 3.  So he was charged with and pled guilty to one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  *See* Plea Agreement at 1.

Beason suffers from several preexisting medical conditions.  Mot. at 2.  He is concerned for his health and safety because of how FCI Fort Dix is handling the COVID-19 pandemic and seeks a reduction of his sentence to time served.  *Id.* at 23.  The Government opposed the motion, *see* Opp'n, ECF No. 42, and Beason replied, *see* Reply, ECF No. 44.  The motion is now ripe.

## II.

A defendant seeking compassionate release "has the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)(i)."  *United States v. Holroyd*, 464 F. Supp. 3d 14, 17 (D.D.C. 2020).  Sentence reduction is appropriate only if the defendant has first exhausted available administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  If all administrative remedies have been exhausted, a court may reduce a term of imprisonment if, "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, . . . it finds that . . . extraordinary and compelling reasons warrant such a reduction."  *United States v. Jackson*, 2021 WL 1299439, at *1 (D.D.C. Apr. 7, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)), *aff'd,* 26 F.4th 994 (D.C. Cir. 2022).  Among those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes." 18 U.S.C. § 3553(a)(1)–(2).  Thus, courts "consider the

2

anticipated effect of compassionate release on crime and public safety for defendant-filed motions as part of their weighing of relevant considerations." *United States v. Long*, 997 F.3d 342, 356 (D.C. Cir. 2021).

### III.

Beason argues first that the risk to his health posed by his preexisting medical conditions is an extraordinary and compelling reason for his compassionate release.[3] Second, he argues that the § 3553(a) factors weigh in his favor because of his exceptional behavior in prison, the small amount of time remaining on his sentence, and the negligible danger posed to the community by his release.

### A.

Beason asserts that even though he has been vaccinated against COVID-19, he has "documented medical conditions that place him at higher risk for [an] adverse outcome or death," especially considering the environment at FCI Fort Dix. Mot. at 8. Beason's medical conditions include obesity, hypertension, a 20-plus year history as a smoker, gastro-esophageal reflux disease (GERD), and a depression/anxiety disorder. *Id.* at 2. The Court first describes the conditions at FCI Fort Dix and then addresses each of these conditions.

---

[3] Beason has exhausted his administrative remedies before the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), so his motion is properly before this Court. *See* Mot. at 6–7 (claiming Beason has exhausted his administrative remedies); Opp'n at 13 (agreeing Beason has exhausted his administrative remedies).

3

Beason's motion assumes that he would be safer from COVID-19 outside prison. He argues that FCI Fort Dix has a high infection rate, that it has an ineffective testing strategy, and that staff do not follow proper COVID-19 prevention guidelines.[4] *See* Mot. at 14–15.

But the available evidence suggests the current conditions at FCI Fort Dix are not so dire. The prison has completed 300 staff inoculations and 2,942 inmate inoculations. *See* Federal Bureau of Prisons, *COVID-19: Coronavirus*.[5] FCI Fort Dix has an inmate population of 2,972 (excluding the satellite camp), so its inmate vaccination rate is nearly 99%. *See* Federal Bureau of Prisons, *FCI Fort Dix*.[6] The Court recognizes that the close quarters of incarceration can facilitate transmission of COVID-19, but this vaccination rate is far higher than the 67.5% vaccination rate in Washington, D.C., where Beason proposes to live if released. *See* Mayo Clinic, *U.S. COVID-19 vaccine tracker: See your state's progress*[7] (listing the District's vaccination rate); Reply at 16 (stating Beason would live with his mother in the District if released); *accord United States v. Mitchell*, No. CR 08-007, 2020 WL 7181118, at *7 (E.D. Pa. Dec. 7, 2020) (stating infection rates outside prisons can offset concerns about a greater risk of contracting COVID-19 in prison). More, there are no active inmate cases at FCI Fort Dix and

---

[4] If Beason means to challenge his conditions of confinement on constitutional grounds, this motion is not the proper method. Instead, he must file a separate civil action against the prison. *See United States v. Edwards*, No. CR 03-234 (JDB), 2021 WL 3128870, at *6 (D.D.C. July 22, 2021) (denying due process and Eighth Amendment arguments because "a compassionate release motion . . . is not the appropriate mechanism or vehicle to raise such a claim of alleged constitutional violations") (cleaned up), *aff'd*, No. 21-3062, 2022 WL 1769144 (D.C. Cir. June 1, 2022).

[5] *Available at*: https://www.bop.gov/coronavirus (last visited June 23, 2022).

[6] *Available at*: https://www.bop.gov/locations/institutions/ftd (last visited June 23, 2022).

[7] *Available at*: https://www.mayoclinic.org/coronavirus-covid-19/vaccine-tracker (last visited June 23, 2022).

4

only four active staff cases.  *See* Federal Bureau of Prisons, *COVID-19: Coronavirus* (last visited June 23, 2022).  Beason thus fails to show that FCI Fort Dix is appreciably more dangerous than the conditions outside the prison.

Beason claims that FCI Fort Dix is likely undercounting its positive case rate because it allegedly does not perform surveillance testing nor does it test vaccinated individuals.  *See* Reply at 3–4.  Perhaps so.  But COVID cases are likely undercounted outside of prison, too.  *See, e.g.*, Carey Goldberg, *Just How Wildly Are Covid Cases Undercounted?*, Bloomberg (June 4, 2022), https://bloom.bg/3QXEKcP (stating that COVID-19 cases in New York City could be 31 times higher than the official count).  Beason presents no evidence that the undercounting inside prison is worse than elsewhere.  Beason also claims that the Bureau of Prisons has sometimes revised its COVID-19 statistics.  *See* Reply at 4.  In one instance, he says that the Bureau "magically" made four staff deaths disappear.  *Id.*  But Beason points to no coverup or malpractice by the Bureau.  Its correction may have been merely to reverse a clerical error, or the staff deaths may have been initially incorrectly attributed to COVID-19.  Without more, this is not a justification for compassionate release.

Now consider Beason's particular health conditions.  Start with his obesity.  The Centers for Disease Control and Prevention (CDC) defines obesity as having a body mass index of 30 or more and defines being overweight as having a body mass index (BMI) of 25 or more.  *See* CDC, *People with Certain Medical Conditions: Overweight and Obesity*.[8]  "The risk of severe illness from COVID-19 increases sharply with higher BMI."  *Id.*

---

[8] *Available at*: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022).

Beason first claimed he had a BMI of 30.  *See* Mot. at 8.  But the most recent official record of Beason's weight says that as of January 2022 he has a BMI of 25.5.  Gov. Ex. 4, ECF No. 42-4 (excerpt of Beason's medical records); *see also* Opp'n at 16.  Beason disputes this record and submitted a revised estimate of his BMI, together with a sworn declaration about his weight, claiming he currently has a BMI of 29.8.  Reply at 6.

The Court hesitates to disregard official medical records.  But even crediting Beason's assertion about his BMI, it does not qualify as an extraordinary and compelling reason for compassionate release.  In *United States v. Jackson*, 26 F.4th 994, 1001–02 (D.C. Cir. 2022), the D.C. Circuit affirmed the denial of a motion for compassionate release in a case in which the inmate argued he was obese.  The Circuit noted that "the nation suffers from an epidemic of obesity," so obesity does not qualify as an "extraordinary circumstance."  *Id.* at 1002.  Beason responds that *Jackson* did not hold "as a categorical matter" that "obesity could never qualify as an extraordinary and compelling circumstance."  Reply at 7 (cleaned up).  But even if Beason's reading of *Jackson* is accurate, he makes no attempt to factually differentiate his case.  The Court thus finds *Jackson* applies and that even granting Beason's claim that he is obese, he does not show sufficient cause for compassionate release.

Now move to Beason's hypertension.  He argues that many courts have granted compassionate release based on an inmate's hypertension.  *See* Reply at 10 (collecting cases). Fair enough.  But none of those cases binds the Court.  And the same arguments that support denying Beason's obesity arguments favor denying his arguments about hypertension. Hypertension is even more common in the United States than obesity.  *Compare* CDC, *Facts About Hypertension*[9] (stating that 47% of U.S. adults suffer from hypertension or are taking

---

[9]  *Available at*: https://www.cdc.gov/bloodpressure/facts.htm (last updated September 27, 2021).

medication for hypertension), *with* CDC, *Adult Obesity Facts*[10] (stating that 41.9% of U.S. adults suffer from obesity).  More, the CDC qualifies hypertension as only a "possibl[e]" risk factor for severe illness from COVID-19.  CDC, *People with Certain Medical Conditions* (last visited June 23, 2022).  For these reasons, it does not qualify as an "extraordinary and compelling" reason for Beason's compassionate release.[11]

Consider next Beason's status as a former smoker, his GERD, and his anxiety and depression.  Beason's medical records do not show that he suffers from any ailments associated with smoking.  *See generally* Mot.; *see also* Opp'n at 17.  With no specific smoking-related illnesses, his status as a former smoker is neither extraordinary nor compelling.  *See* CDC, *Benefits of Quitting* (stating that the health risks of smoking decrease sharply over time)[12]; *see also United States v. Shepard*, No. CR 07-85 (RDM), 2021 WL 848720, at *7 (D.D.C. Mar. 4, 2021) ("[Shepard's] borderline obesity, high blood pressure, and smoker's cough may have been risk factors for COVID-19, but now that he has received the vaccine, those conditions by themselves do not merit release from prison.").

---

[10] *Available at*: https://www.cdc.gov/obesity/data/adult.html (last updated May 17, 2022).

[11] The parties dispute whether Beason currently takes medication for his hypertension. *Compare* Opp'n at 16 ("[T]he defendant's medical records confirm that he has been diagnosed with essential (primary) hypertension, [but] they do not indicate that he takes any form of medication for that condition."), *with* Reply at 9 n.11 (referring to Beason's medical records and claiming they "show[] he was prescribed AmLODIPine for his hypertension on August 6, 2021").  Beason's reading of his medical record is correct.  *See* Mot. at 40 (prescribing amLODIPine for "[e]ssential (primary) hypertension" and instructing Beason to "[t]ake one tablet (10 MG) by mouth each day x 365 day(s)").  Because an FCI Fort Dix doctor prescribed Beason medication for his hypertension, the Court rejects Beason's argument that he is not receiving "appropriate medical treatment" for this condition at FCI Fort Dix.  *See* Reply at 10.

[12] *Available at*: https://bit.ly/3OEcuKe (last visited June 23, 2022).

The CDC does not identify GERD as increasing a person's risk of severe illness caused by COVID-19. *See* CDC, *People with Certain Medical Condition* (last visited June 23, 2022) (omitting any mention of GERD as a risk factor for severe illness from COVID-19). Moving to Beason's anxiety and depression, the CDC does recognize "mood disorders" as a risk category for more severe illness from COVID-19. *See id.* But in the most recent medical record Beason submitted that discusses his mental health, the evaluating physician reported that "his mood, energy, and sleep are okay." Mot. at 36. The doctor also noted that Beason was being offered mental health medication, but he refused to take it. *Id.* Beason cannot request release based on a condition for which he refuses treatment. Thus, none of these conditions justifies release.[13]

Finally, the Court notes that Beason is fully vaccinated. *See* Mot. at 12. He refused a booster shot but claims he did so because the prison offered it to him four months after his second dose. Reply at 4. He points out that the CDC recommends most individuals wait five months before receiving another shot. *Id.* at 4–5. He says he has since requested the booster but has yet to receive it. *Id.* at 5.

Although the Court is concerned that Beason has not yet been able to receive a booster, his lack of a booster is not an "extraordinary or compelling" reason for his compassionate

---

[13] Beason argues that even if his conditions do not individually meet the standard for release, they do when combined. But Beason fails to justify this argument apart from a citation to an order in another criminal case. *See* Reply at 10 (citing *United States v. Washington*, No. 11-cr-105 (RCL), ECF No. 62 at 5–6 (D.D.C. Aug. 21, 2020)). There, the prisoner suffered from conditions that Beason does not have, including asthma and cancer that was only recently in remission. This case thus provides little guidance here, and with no more evidence provided by Beason, the Court does not find the combination of his conditions justifies release. *See Shepard*, 2021 WL 848720, at *7 (holding that borderline obesity, high blood pressure, and smoker's cough, together with a "laundry list of other minor ailments, even in combination" did not justify compassionate release). Sadly, many federal inmates suffer from a combination of maladies. Compassionate release is reserved for extraordinary cases, not for defendants with an assortment of relatively typical health issues.

release. There is no evidence that Beason requested a booster a year ago—when the five months elapsed—rather than very recently. More, the Bureau of Prisons states that "[v]accine doses are available at [every federal prison] for newly admitted and existing inmates" and that "[i]nmates have also been offered booster shots *in accordance with CDC guidance*." Bureau of Prisons, *COVID-19: Coronavirus* (last visited June 23, 2022) (emphasis added).

Beason's claim would fare better if he could establish that the prison had improperly denied him a booster shot or cannot administer one to him. *See, e.g.*, *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (stating "vaccines offer relief far more effective than a judicial order" but recognizing that inmates unable to receive a vaccine have more meritorious claims for compassionate release than most). But Beason has not shown that. And even though a booster would better protect him against severe illness from COVID-19, Bureau of Prison guidelines still consider him "fully vaccinated." *See* Federal Bureau of Prisons, *Federal Bureau of Prisons Clinical Guidance: COVID-19 Vaccine Guidance* at 1 (February 25, 2022).[14] Thus, Beason's lack of a booster shot does not qualify as an extraordinary and compelling reason for his release.

The Court recognizes the worry and uncertainty prisoners like Beason face during a pandemic. Beason has legitimate concerns that the Court does not seek to trivialize. But none of Beason's conditions are extraordinary or compelling, and therefore they do not meet the standard for compassionate release under § 3582(c)(1)(A)(i).

**B.**

Even if Beason "had presented extraordinary and compelling reasons for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his

---

[14] *Available at*: https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v17.pdf.

release." *United States v. Dempsey*, 2021 WL 2073350, at *4 (D.D.C. May 24, 2021) (cleaned up). Among those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to "reflect the seriousness of the offense" and "to protect the public from further crimes." 18 U.S.C. § 3553(a)(1)–(2). The § 3553(a) factors counsel against Beason's release.

Start with the nature and circumstances of the offense and Beason's history. This offense involved a firearm, and Beason has been convicted of three prior offenses, each involving possession of a loaded handgun. *See* April 13 Order at 2. Firearms offenses are serious crimes. And when officers arrested Beason for this offense, he was still under supervision for his prior firearms-related conviction. *Id.* Thus, Beason's repeated possession of firearms over many years suggests a high probability of recidivism. *See also* U.S. Sent'g Comm'n, *Recidivism Among Federal Firearms Offenders* at 4 (June 2019) (stating that firearms offenders of every age group recidivate at a higher rate and more quickly than non-firearms offenders and are more likely to be rearrested for serious crimes). This history weighs heavily against release.

The Court recognizes that Beason has been a model inmate. He has received no disciplinary infractions despite FCI Fort Dix citing more inmates for infractions than almost any other federal prison. *See* Reply at 11. Over the past five months, he has taken several classes offered at FCI Fort Dix, including courses on drug education, parenting, and brain health. Mot. at 17.

But although the Court is encouraged by Beason's commitment to improving himself, it must view these recent improvements against the backdrop of his long string of felonies. Without a longer record of good behavior, the Court is unpersuaded that Beason would no longer endanger his community if released early. Indeed, although Beason argues any risk he poses to

10

the community "can be abated through modification of the existing conditions of supervised release," the fact that Beason was on supervised release when arrested for the present crime suggests otherwise. *Id*. at 23.

Finally, the Court notes that FCI Fort Dix is likely to imminently release Beason to a halfway house to serve out the remaining six months of his sentence. *See* Reply at 1–2. This new environment will likely alleviate many of Beason's concerns about the safety of FCI Fort Dix. And the supervision provided by the halfway house will offer greater protection to the community than releasing Beason to live with his mother.

**IV.**

For these reasons, it is hereby **ORDERED** that Defendant's Motion for Reduction in Sentence is DENIED.

Dated: June 29, 2022                                      TREVOR N. McFADDEN, U.S.D.J.